UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:24-cv-22927-ALTMAN

**CENTENNIAL BANK**,

*Plaintiff*,

*v.*

**JULIA SOKOL AND YOSSI SOKOL**,

*Defendants.*
_____/

## ORDER

This matter comes before this Court on the Plaintiff Centennial Bank ("Centennial")'s Motion for Default Final Judgment ("the Motion") [ECF No. 46] against the Defendants Julia Sokol and Yossi Sokol (the "Sokols" or the "Defendants"). This Court has carefully reviewed the Motion, the record, and the applicable law. For the reasons set forth below, the Motion is **GRANTED**.

**I.   Factual and Procedural History**

Centennial filed this action on August 1, 2024, asserting two claims for breach of guaranty, one against each Defendant. *See* Compl. [ECF No. 1] at 6–8. The Complaint alleges that the Sokols breached two identical commercial guaranties. *See ibid.*; Julia Sokol's Commercial Guaranty [ECF No. 46–3]; Yossi Sokol's Commercial Guaranty [ECF No. 46-4] (together, the "Guaranties").

Yossi Sokol was personally served on August 16, 2024, and Julia Sokol was served on October 29, 2024. *See* Certificates of Service [ECF Nos. 5-1, 10-1]. Yossi Sokol failed to appear, and the Clerk entered default against him on November 15, 2024. *See* Clerk's Entry of Default for Yossi Sokol [ECF No. 22]. Julia Sokol initially answered on November 4, 2024. *See* Answer [ECF No. 18]. But then, she ceased all contact with the Court, in violation of several of our orders. *See generally* Docket. On April

10, 2025, for example, we ordered her "to file certificates of interested parties and corporate disclosure statements that contain a complete list of persons, associated persons, firms, partnerships, or corporations, that have a financial interest in the outcome of this case, including subsidiaries, conglomerates, affiliates, parent corporations, and other identifiable legal entities related to a party by April 16, 2025." Paperless Order for Certificates of Interested Parties and Corporate Disclosure Statement [ECF No. 33]. Though we warned that "[f]ailure to comply with this Order will result in sanctions, including dismissal without further notice," *ibid.*, she didn't respond, *see generally* Docket. We then ordered her once again to comply—this time, by May 9, 2025. *See* Paperless Order to Show Cause [ECF No. 37]. We informed her that if she didn't, we'd order Centennial to "move for entry of clerk's default against her." *Ibid.* She again failed to respond. *See generally* Docket. And that's not all. She also ignored our order to appear at a settlement conference before U.S. Magistrate Judge Enjolique A. Lett. *See* Paperless Order for Settlement Conference [ECF No. 34]. That order, too, warned that noncompliance could result in sanctions "including dismissal without prejudice and without further notice." *Ibid.* Even so, Julia Sokol was a no-show for the conference. *See* May 14, 2025, Settlement Conference Minutes [ECF No. 39] ("Defendant Julia Sokol, non appearance."). We then directed Centennial to "to move for clerk's entry of default" against her. Paperless Order Directing Centennial to Move for Clerk's Entry of Default [ECF No. 40]. The Clerk entered default against her on May 21, 2025. *See* Clerk's Entry of Default for Julia Sokol [ECF No. 42].

## II.   The Law

"When a defendant has failed to plead or defend, a district court may enter judgment by default." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (per curiam) (citing FED. R. CIV. P. 55(b)(2)). A "defendant, by his default, admits the plaintiff's well–pleaded allegations of fact," as set forth in the operative complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (Kravitch, J.). But "a defendant's default does not in itself warrant

2

the court entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (Wisdom, J.); *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well–pled in the complaint and is therefore established by the entry of default.") (Allgood, J.). "[A] default final judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) (Tjoflat, J.). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245. In issuing a default judgment, a court may award damages "without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation," so long as "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005) (Tjoflat, J.) (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1543 (11th Cir. 1985) (Johnson, J.)).

### III. The Guaranties and Prior Judgment

The two counts in the Complaint each allege a single breach of guaranty, one against each Defendant. *See* Compl. at 6–8. Count I is brought against Julia Sokol for breach of her Commercial Guaranty; Count II is against Yossi Sokol for his. *See* Compl. at 6–8. "A guaranty is a collateral promise to answer for the debt or obligation of another." *Fed. Deposit Ins. Corp. v. Univ. Anclote, Inc.*, 764 F.2d 804, 806 (11th Cir. 1985). "A breach of guaranty claim is akin to a breach of contract claim under which the guarantor is alleged to have breached its promise by failing to pay the debt of another on the default of the person primarily liable for payment." *Ecp Station I LLC v. Chandy*, 2016 WL 3883028, at *3 (M.D. Fla. June 29, 2016) (Sneed, Mag J.), *report and recommendation adopted*, 2016 WL 3856174 (M.D. Fla. July 15, 2016) (Lazzara, J.) (cleaned up). To establish a claim for breach of contract, Centennial must prove "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F. 3d 1256, 1272 (11th Cir. 2009)

(*citing Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)). "To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Ibid.* Under Florida law, "a party's nonperformance must go to the essence of the contract" to constitute a material breach. *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 849 (11th Cir. 2013) (per curiam). Generally, whether a breach is material is a "question of fact." *Lakatos v. Fla. IPS*, 2025 WL 1234010, at *6 (S.D. Fla. Apr. 29, 2025) (Bloom, J.) (cleaned up).

The Sokols guaranteed the debts of borrower Why Not I, LLC ("Why Not") under a commercial marine loan for a ship. *See* Promissory Note [ECF No. 46-1]; Preferred Ship Mortgage [ECF No. 46–2]; the Guaranties. Under the Guaranties, Sokols agreed to be jointly and severally liable for all obligations of the borrower, Why Not—including "attorneys' fees," "costs," and "[j]udgments" against Why Not. Guarantees at 1. Here's exactly what the Guaranties say:

> The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and **all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that [Why Not] individually or collectively or interchangeably with others, owes or will owe [Centennial]. "Indebtedness" includes**, **without limitation**, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, **other obligations, and liabilities of [Why Not], and any present or future Judgments against [Why Not.]**

*Ibid.* What's more, the Sokols' obligations under the Guaranties are "unconditional[ ]" and "continuing[.]" *Ibid.* After Why Not failed to pay its marine loan, therefore, Centennial sought to collect the money owed from the Sokols. But they haven't paid either—that's what's at issue in this current action. *See generally* Docket. The Sokols' failure to fulfill their most basic and essential obligation—to pay a liquidated debt they expressly promised to guarantee—constitutes a material and

total breach. Their failure to perform directly defeats the purpose of the Guaranties and entitles Centennial to relief.

Informing us now are one prior default judgment and three orders. These are all in the case, *Centennial Bank v. M/V "Why Not"*, No. 22-cv-22883 (S.D. Fla. 2022).[1] When Why Not defaulted on its loan obligations, Centennial obtained a Final Default Judgment against Why Not for "$147,372.01" in that case on August 3, 2023. *See* the Order Adopting Report and Granting Final Default Judgment [ECF No. 46-5] at 1. That's pursuant to the *first* order, the Order Adopting Report and Granting Final Default Judgment (the "Default Judgment Order"). The remaining two orders are, *one*, the Order Adopting Report and Granting Centennial's Motion to Tax Costs [ECF No. 46-6] (the "Costs Order"); and *two*, the Order Adopting Report and Granting In-part and Denying In-part Attorney's Fees and Prejudgment Interest [ECF No. 46-7] (the "Attorneys' Fees and Prejudgment Interest Order"). To recover the final judgment amount, Centennial alleges, the ship "was sold for $65,000.00 on September 12, 2023[.]" Mot. at 4. But, as Centennial explains, the sale left "a deficiency of $82,372.01 remaining owed by Why Not to Centennial under the August 3, 2023[,] Final Judgment." *Ibid.* The Guaranties obligate the Sokols to pay Why Not's debt. But despite Centennial's repeated demands, the Sokols have allegedly failed to pay. So, according to Centennial, the Sokols are "jointly and severally liable for the full[ ] payment and satisfaction of the aforementioned Orders against Why Not in the aggregate amount of $287,749.20" in *this* case. *Ibid.*

Our review of the record in this case confirms that the Complaint adequately establishes our subject-matter jurisdiction under 28 U.S.C. § 1332, our personal jurisdiction over the Sokols, and the propriety of venue in this District. We also find that the Complaint sufficiently pleads two violations

---

[1] Though these three orders are from a prior case, we cite to them as if they're on this Docket. That's because they are; Centennial attached them to its Motion.

5

of breach of guaranty. Centennial has thus satisfied the requirements for the entry of a final default judgment against the Sokols.

**IV.   Analysis**

Centennial now requests the following: "a Default Final Judgment against the Sokols in the principal amount of $287,749.20 consisting of $82,372.01 for the remaining balance of Final Judgment after [the ship's] sale; $159,435.99 for the taxable costs Order; and $45,671.20 for the attorneys' fees and prejudgment interest Order, plus pre judgment interest and post judgment interest (either as prescribed by the Promissory Note or alternatively, 28 U.S.C. Section 1961) and Centennial's attorneys' fees and costs which continue to accrue." Mot. at 8–9. The "$45,671.20" is made up of "$36,140.00 in attorney's fees and $9,531.20 in prejudgment interest[.]" *Id.* at 4. As we've said, the Guaranties explicitly provide for the recovery of "attorneys' fees" and "costs" incurred in enforcement. Guaranties at 1. After reviewing the Motion and the accompanying declarations, we find that Centennial has established that it's entitled to all of these.

We start with the remaining balance of the Final Judgment. We adopt the reasoning of the Default Judgment Order. *See supra.* As for Centennial's allegations about the ship's sale, the Sokols had many chances to respond and chose not to. So, we take Centennial's allegations as true, that the remaining balance is "$82,372.01[.]" Mot. at 4; *see* Declaration of Jodi Allgood, "Special Assets Director" of Centennial [ECF No. 46-9] at 1–2 (averring that the "deficiency" on the final judgment is indeed "$82,372.01").

Next, we address taxable costs. In *Centennial Bank v. M/V "Why Not"*, "the Court award[ed] $159,435.99 in taxable costs to Centennial Bank, to be paid by Defendants M/V Why Not and Why

6

Not I, LLC." Costs Order at 1.[2] We find that the taxable cost award remains recoverable here, because according to Centennial, those costs "were not paid in the prior action." Mot. at 4.

Centennial also requests the "$36,140.00 in attorney's fees" previously ordered. Mot. at 4; *see* Attorneys' Fees and Prejudgment Interest Order at 1. Again, the Guaranties explicitly provide for the recovery of "attorneys' fees[.]" Guaranties at 1. And in the previous action, the court already carefully reviewed Centennial's billing records and sworn declarations for reasonableness, before reducing the requested rates and total hours expended. *See Centennial Bank v. M/V "Why Not"*, 2024 WL 3072041, at *9–10 (S.D. Fla. Mar. 6, 2024) (Goodman, Mag. J.), *report and recommendation adopted sub nom. Centennial Bank v. M/V Why Not*, 2024 WL 3070755 (S.D. Fla. June 20, 2024) (Scola, J.). Since "[c]ourts are often faced with inadequate fee applications or with claims for hours or fee rates which seem excessive," the court used its "own knowledge and experience" to "form an independent judgment" on the reasonableness of the hourly rate and hours expended. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (cleaned up). The Eleventh Circuit defines a reasonable hourly rate as "the prevailing market rate in the relevant legal community for similar services by lawyers with reasonably comparable skills, experience, and reputation." *Id.* at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). "The [fee] applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id.* at 1302 (citation omitted). In determining the prevailing market rate, the court considered several factors, including the following: "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency,

---

[2] After review of the motion, U.S. Magistrate Judge Jonathan Goodman had recommended that the court "grant Centennial's motion to tax costs in its entirety and award Centennial $159,435.99." Costs Order at 1. Upon adopting the report and recommendation in full, U.S. District Judge Robert N. Scola, Jr., specifically noted that though there were no objections to the report, he reviewed it "on a de novo basis and finds it cogent and compelling." *Ibid.* Judge Scola likewise reviewed the other two orders at issue "de novo" despite a lack of objections. *See* Default Judgment Order at 1; Attorneys' Fees and Prejudgment Interest Order at 1.

7

the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (Ryskamp, J.) (discussing factors set out in *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717–18 (5th Cir. 1974)). After doing so, the court *first* reduced the attorneys' rates as follows: Michael Karcher (partner) from $525.00 $625.00 per hour to $450.00 per hour; Serena Witter (associate) from $580.00 and $600.00 per hour to $375.00 per hour; Luciene Grubbs (paralegal) from $300.00 and $315.00 per hour to $125.00 per hour; Janet Hart (paralegal) from $300.00 and $315.00 per hour to $100.00 per hour; and Melissa Baum (paralegal) from $300.00 and $315.00 per hour to $100.00 per hour.[3] *Centennial Bank v. M/V "Why Not"*, 2024 WL 3072041, at *4–6. The court noted that "the work performed in [the] case [was] within the typical range of similar cases and [did] not find any reason why the work required in this specific case would justify a higher rate, particularly in light of the fact that the case resulted in a default judgment." *Id.* at *5 (quoting *Seacoast Nat'l Bank v. M/Y Viaggio*, 2023 WL 6930685, at *1 (S.D. Fla. Oct. 2, 2023) (Strauss, Mag. J.), *report and recommendation adopted*, 2023 WL 6908985 (S.D. Fla. Oct. 19, 2023) (Ruiz, J.)). Nor did the court conclude the default presented any novel or complex legal issues that would warrant higher fees. *See ibid.* ("[T]he Undersigned notes that the instant case was a relatively run-of-the-mill maritime foreclosure action, which Defendants failed to contest, resulting in a garden-variety default judgment." (emphasis removed)). *Second*, the court applied a "twenty (20) percent reduction" to Centennial's "already–reduced attorney's fees to account for excessive time (including 15–minute billing intervals), block billing, duplicative work, and clerical work." *Id* at 8. In this Motion, Centennial simply seeks to enforce the judgment and awards already entered against Why Not—judgments and awards which the Sokols guarantied but then ignored. So, we order the Sokols to pay the attorneys' fees already awarded.

---

[3] The court doesn't explain why each timekeeper billed at two separate rates.

8

But Centennial doesn't just request reimbursement for past attorneys' fees; it now also requests "attorneys' fees and costs which continue to accrue." Mot. at 9. Centennial doesn't say any more about this. *See generally* Mot. Nor does Centennial submit any additional billing records or evidence showing these new amounts. That won't do. *See United States v. Esformes*, 60 F.4th 621, 635 (11th Cir. 2023) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." (quoting *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014))); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed [forfeited]."); *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."). We won't, therefore, assess any additional attorneys' fees or costs at this time. But if Centennial wants to recover these fees or costs, it can file a separate motion supported by contemporaneous billing entries, sworn declarations, and documentation. That way, we can evaluate the reasonableness of the request. Unsupported or conclusory requests will not be considered. *See supra*.

We also award interest. We'll initially address Centennial's prior prejudgment interest award for "$9,531.20 in prejudgment interest[.]" Mot. at 4. Then, we'll assess Centennial's additional request for "prejudgment interest and post judgment interest (either as prescribed by the Promissory Note or alternatively, 28 U.S.C. Section 1961)[.]" *Id.* at 9. Federal law permits courts to award pre–judgment interest in civil cases. *See* 28 U.S.C. § 1961 (permitting interest in a civil case and providing a mode of computation). "Prejudgment interest is, by definition, interest that accrues until judgment is rendered." *SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1321 (11th Cir. 2007). "Whether a successful claimant is entitled to prejudgment interest is a question of state law." *Venn v. St. Paul Fire & Marine Ins. Co.*, 99

9

F.3d 1058, 1066 (11th Cir. 1996). If "a verdict liquidates damages on a plaintiff's out–of–pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss." *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So.2d 212, 215 (Fla. 1985). "The promissory notes dictate the rate of pre-judgment interest." *CCUR Aviation Fin., LLC v. S. Aviation, Inc.*, 2022 WL 225851, at *3 (S.D. Fla. Jan. 26, 2022) (Bloom, J.); *see also* Restatement (Second) of Contracts § 354 cmt. a (1981) ("If the parties have agreed on the payment of interest, it is payable not as damages but pursuant to a contract duty that is enforceable as is any other such duty[.]").

In the prior action, the court applied a rate of eighteen percent per year pursuant to the Promissory Note.[4] *See Centennial Bank v. M/V "Why Not"*, 2024 WL 3072041, at *2. That rate is expressly permitted under Florida law. *See Singhal v. Unison Agreement Corp.*, 2023 WL 2734230, at *4 (S.D. Fla. Mar. 31, 2023) (Singhal, J.) ("Florida has a civil usury statute that defines usury as charging more than 18 percent interest annually on a loan of $500,000 or less." (citing § 687.02(1), Fla. Stat.)); *Oakland E. Manors Condo. Ass'n, Inc. v. La Roza*, 669 So. 2d 1138, 1139–40 (Fla. 4th DCA 1996) (finding "merit in [the] appellant's argument that the trial court erred when it refused to award pre-judgment interest at the rate of eighteen percent on all past due assessments" where the "bylaws specifically provided for unpaid assessments to bear interest at the highest rate of interest . . . permissible under the usury laws of the State of Florida," or, "18 percent per annum" (cleaned up)). Accordingly, the magistrate judge recommended, and the court ordered, the "requested amount of $9,531.20 (184 days times the rounded daily interest rate of $51.80) in pre-judgment interest." *Centennial Bank v. M/V "Why Not"*, 2024 WL 3072041, at *9–10. Consistent with the previous judgment, then, we award "$9,531.20 in prejudgment interest to Centennial[.]" Attorneys' Fees and Prejudgment Interest Order at 1.

---

[4] That's after the court ordered supplemental briefing on pre-judgment interest due to Centennial's initial deficient request. *See* Paperless Order, *Centennial Bank v. M/V "Why Not"*, No. 22-cv-22883 (S.D. Fla. Dec. 11, 2023) (Goodman, Mag. J.), ECF No. 51 ("If Centennial seeks an award of pre-judgment interest, then it must show its work.").

We finally turn to Centennial's request for pre- and post-judgment interest separate from the prior interest award. Centennial requests "prejudgment and post judgment interest, that shall continue to accrue[.]" Mot. at 7. Elsewhere in its Motion, Centennial says that requests that the interest be awarded "as prescribed by the Promissory Note or alternatively, 28 U.S.C. Section 1961[.]" *Id.* at 9. For post-judgement interest, Centennial also says the following:

- For interest, the Promissory Note provides:

  Default Interest After Final Judgment. Following any final judgment obtained by lender in connection with Borrower's failure to pay this note when due, Interest shall continue to accrue at the Default Rate of 18% or highest rate permissible by law.

- Centennial seeks an award of post-judgment interest pursuant to the Promissory Note's Default Rate of 18% or alternatively, if found impermissible by the Court, the rate set forth by 28 U.S.C. Section 1961.

*Id.* at 6–7 (citing the entire Promissory Note).

We first deny the Plaintiff's request for pre-judgment interest because it doesn't "explain why it is entitled to interest or how that interest should be calculated," even though it "bears the burden of establishing its claims to relief[.]" *Affordable Aerial Photography, Inc. v. Palm Beach Real Est., Inc.*, 2021 WL 2823270, at *5 (S.D. Fla. July 7, 2021) (Altman, J.) (first citing *Stross v. Roberson*, 2019 WL 7562382, at *4 (M.D. Fla. Oct. 3, 2019) (Hoffman, Mag. J.), *report and recommendation adopted sub nom. Stross*, 2019 WL 5303676 (M.D. Fla. Oct. 21, 2019) (Dalton, J.) (denying pre-judgment interest where the plaintiff "provide[d] no argument or authority explaining why he [was] entitled to such relief, [or] . . . a computation of the prejudgment interest sought" and noting that "[i]t is the [p]laintiff's burden, not the [c]ourt's, to demonstrate that he is entitled to the relief sought"); and then citing *McKennon v. NewsCastic, Inc.*, 2018 WL 5847424, at *7 (M.D. Fla. Sep. 7, 2018) (Irick, Mag. J.), *report and recommendation adopted by*, 2018 WL 5840687 (M.D. Fla. Nov. 8, 2018) (Mendoza, J.) (denying a similarly deficient request for prejudgment interest)); *see also Wareka v. Excel Aesthetics LLC*, 2024 WL 1532267, at *9 (S.D. Fla. Mar. 28, 2024) (Goodman, Mag. J.), *report and recommendation adopted*, 2024 WL 1833085

11

(S.D. Fla. Apr. 26, 2024) (Williams, J.) (denying a similarly deficient request for pre-judgment interest because she "merely mentions it in passing" and doesn't "discuss why or how she is specifically entitled to pre-judgment interest, nor did she cite to any legal authority supporting her request"); *Esformes*, 60 F.4th at 635 ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." (quoting *Sapuppo*, 739 F.3d at 681)); *Hamilton*, 680 F.3d at 1319 ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d at 1163 ("Arguments not properly presented . . . are deemed [forfeited]."); *Mahaffey*, 588 F.3d at 1146 ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

For contract actions, for example, "prejudgment interest accrues from the date payment was due under the contract." *FDIC v. Attorneys' Title Ins. Fund, Inc.*, No. 12-23599-CIV, 2015 WL 11784950, at *3 (S.D. Fla. Mar. 11, 2015) (Seitz, J.) (citing *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n,* 117 F.3d 1328, 1341 (11th Cir. 1997)). "If no due date is established under the contract, prejudgment interest is calculated from the earlier of 'the date of the pre-suit demand or the date the complaint was filed.'" *Ibid.* (quoting *Int'l Speedway Corp. v. Racing In-Sites, Ltd.,* 2014 WL 2894504, at *9 (M.D. Fla. June 26, 2014) (Honeywell, J.)). But Centennial never tells us from what date its prejudgment interest is to accrue. If the Guaranties or Promissory Note say so, it's in provisions that Centennial never identifies. And again, Centennial—not the Court—"bears the burden of establishing its claims to relief[.]" *Affordable Aerial Photography, Inc.*, 2021 WL 2823270, at *5.

So too for the interest rate—Centennial never identifies what rate we're to use, much less the provision of the Guaranties or Promissory Note it comes from. True, upon our own review of the Promissory Note, there's a pre-judgment interest rate provision:

> **INTEREST AFTER DEFAULT**. Upon default, including failure to pay upon final maturity, **the interest rate on this Note shall be increased to 18.000% per annum**

12

> **based on a year of 360 days**. However, **in no event will the interest rate exceed the maximum interest rate limitations under applicable law.**

Promissory Note at 1 (emphases added). But again, our job as a Court is to adjudicate disputes, not hunt through contracts for provisions a party hasn't taken the time itself to identify. What's more, Centennial still doesn't tell us whether the "maximum" permissible interest rate referenced in the Promissory Note is eighteen percent or higher (in which case we can award the "18.000% per annum" requested rate) or lower than eighteen percent (in which case we can't). *Ibid.*

As for post-judgment interest, our question is whether it shall accrue at the federal statutory rate, in accordance with 28 U.S.C. § 1961, or if the parties can contract for a different rate, eighteen percent per year. Here, the Promissory Note provides that

> Default Interest After Final Judgment. Following any final judgment obtained by lender in connection with Borrower's failure to pay this note when due, Interest shall continue to accrue at the Default Rate of 18% or highest rate permissible by law.

Promissory Note at 1. But again, Centennial's Motion is absent of argument. Centennial never explains, for example, why it's entitled to an eighteen percent rate as opposed to the rates updated quarterly under Florida law. *See* § 55.03 Fla. Stat. (2024) ("On December 1, March 1, June 1, and September 1 of each year, the Chief Financial Officer shall set the rate of interest that shall be payable on [civil] judgments."). And it doesn't even appear to be confident that its requested rate is justified—after all, it asks us to use "the rate set forth by 28 U.S.C. Section 1961" if we find the eighteen percent rate "impermissible[.]" Mot. at 4.

Since Centennial fails to justify its alternate rate, post–judgment interest shall accrue in accordance with 28 U.S.C. § 1961 from the date of entry of this Default Judgment until the judgment amount and all accrued interest are paid in full by the Sokols to Centennial.

***

After careful review, then, we hereby **ORDER** and **ADJUDGE** as follows:

13

1. The Plaintiff's Motion for Final Default Judgment [ECF No. 46] is **GRANTED**. In accordance with Federal Rule of Civil Procedure 58, final judgment will be entered separately.

2. The Plaintiff shall be awarded the principal sum of **$287,749.20** in damages against the Defendants, which includes:

    - **$82,372.01** for the remaining balance of the Final Judgment after the ship's sale;
    - **$159,435.99** in taxable costs awarded on November 2, 2023, in *Centennial Bank v. M/V Why Not*, which remain unpaid and are recoverable here;
    - **$45,671.20** in awarded attorneys' fees and prejudgment interest awarded on March 6, 2024, in *Centennial Bank v. M/V Why Not*, which remain unpaid and are recoverable here.

3. Post–judgment interest shall accrue in accordance with 28 U.S.C. § 1961 from the date of entry of this Default Judgment until the judgment amount and all accrued interest are paid in full by the Defendants to the Plaintiff.

4. If the Plaintiff seeks additional attorneys' fees and costs, it must file a separate motion with billing records and documentation justifying those amounts. Otherwise, we won't award further fees and costs.

5. The Court will retain jurisdiction to determine the amount of any supplemental attorneys' fees and costs.

6. This case shall remain **CLOSED**. All other deadlines are **TERMINATED**, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in the Southern District of Florida on July 30, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record